THOMAS, County Judge, v. TAYLOR.

(Court of Civil Appeals of Texas. San Antonio. Jan. 7, 1914. Rehearing Denied Feb. 4, 1914.)

1. SCHOOLS AND SCHOOL DISTRICTS (§ 135*)—TEACHER'S CONTRACT — REJECTION BY SUPERINTENDENT—DISCRETION.

Under Acts 29th Leg. c. 124, § 39, providing that the county superintendent, or county or county judge as ex officio county superintendent, "shall examine all contracts between the trustees and teachers, * * * and if in his judgment such contracts are proper, he shall approve the same, * * * and shall be authorized to consider the amount of salary promised to the teacher," the superintendent's power as to such contracts is not confined merely to a revision of the matter of salary, but he has full discretion to examine and decide as to the propriety of every such contract, and to approve or reject same as his sound judgment may direct.

[Ed. Note.—For other cases, see Schools and School Districts, Cent. Dig. §§ 130, 292–297; Dec. Dig. § 135.*]

2. STATUTES (§ 181*)—CONSTRUCTION.

In construing a statute, the general intent must be kept in view, and the whole and every part must be considered to harmonize all the parts.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 259, 263; Dec. Dig. § 181.*]

3. SCHOOLS AND SCHOOL DISTRICTS (§ 135*)—TEACHER'S CONTRACT—REJECTION BY SUPERINTENDENT—GROUNDS.

It was not an abuse of discretion for the county judge, as ex officio county superintendent, to reject a contract between trustees of a school district and a teacher, where it appeared that the teacher was under criminal charges for misappropriating school money, and that the contract employed him for nine months, while the other teachers were employed for only eight, and that it gave him a salary which the judge deemed excessive.

[Ed. Note.—For other cases, see Schools and School Districts, Cent. Dig. §§ 130, 292–297; Dec. Dig. § 135.*]

Appeal from District Court, La Salle County; J. F. Mullally, Judge.

Action by R. A. Taylor against Covey C. Thomas, County Judge and Ex Officio County Superintendent. From judgment for plaintiff, defendant appeals. Reversed.

B. W. Teagarden, of San Antonio, J. Albert Strawn, of Cotulla, and John A. Valls, of Laredo, for appellant. Frank B. Earnest and Jno. W. Willson, both of Cotulla, and Hertzberg, Barrett & Kercheville, of San Antonio, for appellee.

FLY, C. J. This is an appeal from an order granting a writ of temporary injunction, which restrained appellant from attempting to prevent appellee from performing his duties as teacher in school district No. 1, La Salle county.

It appears from the pleadings that the trustees of school district No. 1 entered into a contract with appellee to employ him as teacher for nine months "at a salary of $177.75 per school month, and free use of dwelling on school property." That contract was presented to appellant, the county judge and ex officio county superintendent of La Salle county, for his action thereon, and on August 12, 1913, he declined to approve the contract. The reasons for his refusal were addressed to the trustees, and are in part as follows:

"Because on a charge of having embezzled $210.50 of money alleged to be the property of Cotulla common school district No. 1 of said La Salle county said Prof. Taylor was, on his examining trial, held before H. B. Stedham, justice of the peace, on the 31st day of May, 1913, held to await the action of the grand jury at its next regular term on the 6th day of October, 1913, said bond being in the sum of $500, which bond he gave. I testified in this examining trial, and heard practically all the testimony given by the other witnesses, and in my opinion said justice of the peace was authorized in holding him to await the action of the grand jury. Should the grand jury indict him, and should he be convicted, it might be im-

possible for him to carry out the terms of this contract. School is to begin September 1st, and cannot see my way clear to approve the contract, as no one knows what will be done in the month thereafter. Should he be indicted and not convicted, it might cause still greater confusion and dissatisfaction, and result in practically disrupting the school.

"Because he has violated the contracts made for the school terms of 1911–1912 and 1912–1913 in this: That he agreed in said contracts to discharge the duties required of him in accordance with the school laws of Texas and the regulations of the state superintendent and of the county superintendent of said La Salle county; that under such laws and regulations he was informed and knew that he had no right to collect and retain all or any part of the tuition derived from 'the overs and unders' in addition to the maximum salary allowed by law, which he was receiving, but that he did collect and retain at least part of said tuition, the exact amount of which I do not know, as said Prof. Taylor, although thereto requested by me, has failed and refused to make a sworn and itemized statement showing how much of such tuition he collected for the years 1911–1912 and 1912–1913.

"Because under the contracts filed with and approved by me for 1911–1912 and 1912–1913 as ex officio county superintendent of La Salle county, Tex., said Prof. Taylor was not to receive, as part of his compensation, any of the tuition from 'overs and unders,' as he was informed and knew; that he made what he terms 'private contracts' with the trustees, by which they agreed that he was to retain such tuition; that said 'private contracts,' and neither of them, were ever submitted to me, and were never approved by me in any way; that said Taylor, to the best of my information and understanding, collected during the year 1911–1912 at least $200 from such tuition, and paid to the said school fund only $32.40, which am informed was paid in by pupils as contributions to the domestic science department; that said Taylor did not pay in any of the tuition collected during the year 1912–1913 until several weeks after the close of school, and after demand made by me upon him in person that he should pay same when he, said Taylor, made a statement showing that he had collected during said year from such tuition the sum of $210.50 which he thereupon paid to the county depository for the credit of said school fund; that said statement was not sworn to by him, and although he promised to make one and swear to it, he has never done so, and I understand that he now refuses to do so.

"Because to the best information I can obtain there is at least $200 due the school fund of the Cotulla common school district No. 1 of said La Salle county for tuition from 'overs and unders' collected by said Prof. Taylor during the year 1911–1912, which tuition he has not paid, and has refused to account for in any way although thereto requested, and it has become necessary to file a suit on this date, or within the next day or so, against said Taylor for an accounting, and for the recovery of any sum due said school district. This will have to be done in accordance with the ruling of the state superintendent, and, as I understand that you trustees refuse to sue Prof. Taylor for such accounting, and for any sum of money due said school district, the suit will probably be brought by taxpaying citizens, with the necessary allegation that you refuse to act in accordance with the ruling of the state superintendent.

"Because the contract with Prof. Taylor that you wish me to approve for the ensuing term employs him for nine months, whereas the contracts with the other teachers of the same school employ them for only eight months, and see no use of having a superintendent one month with no teachers under him.

"Because you allow him a salary of $177.75 per month, which really consider too much, but do not reject contract on account thereof, and in addition give him 'free use of dwelling on school property,' and do not consider that proper. I know no law authorizing the school fund to furnish the head teacher and his family a dwelling free of charge. The use of the dwelling I would consider worth $10 to $15 per month, and it should be rented out, and the rent paid into the school fund. The mere fact that you have been allowing him to live in said house, the property of the school fund, free of rent, and that he is so living there now, does not, in my opinion justify an indefinite continuance thereof.

"Because said Prof. Taylor, as shown by accounts presented to me for approval during the years 1911–1912 and 1912–1913, acted as the purchasing agent for the board of trustees for Cotulla common school district No. 1 of said La Salle county, and practically every account made by said school district during said years was approved by him before the trustees of said district would approve same, and upon their approval I would approve same; that said trustees and I trusted him to buy only such things as could lawfully be paid for by the school fund, and also relied upon him to report all items to us correctly; that, as shown by affidavit of N. C. Windrow on file in my office, said Taylor, about the 6th day of February, 1913, had said Windrow to order for the pupils of said district a basket ball; that when same arrived said Taylor took said basket ball and instructed said Windrow to charge the price of same, $3.45, as follows: $2 as grape juice and $1.45 as chalk, said Taylor stating at

the time to said Windrow that he, Taylor, did not know whether the account would be approved if charged as a basket ball; that said Windrow made the charge against said school district as instructed by said Taylor, and about March 1, 1913, made said bill for $3.45 as being $2 worth of grape juice and $1.45 as chalk, took said bill to said Taylor, who approved same, then to said trustees who approved same and then to C. C. Thomas, ex officio county superintendent, who approved same and said Windrow received his said $3.45 from the school funds of Cotulla common school district No. 1 of La Salle county, Tex., and said fund is out said amount of money for what I believe to be an illegal expenditure through the fault of said Prof. Taylor; that if same is a legal expenditure, evidently said Prof. Taylor did not so believe at the time, or was in serious doubt about same, and used this method to deceive said trustees and myself in order to have the school fund pay for a basket ball when have been told that entertainments were given occasionally and admission charged and received by said Taylor with which to secure funds to pay for such articles for the pupils."*

The matter was appealed to the county school trustees and to the state superintendent of public instruction, and the action of appellant in refusing to approve the contract was sustained, and appellee then applied to the judge of the Forty-Ninth judicial district for temporary mandamus and injunction to compel appellant to approve the contract and restrain him from interfering with appellee in teaching the school. The writ of injunction was granted, and this appeal is from the order granting the same.

[1] In 1905 an act was passed by the Legislature, "providing for a complete system of public free schools in Texas," which act provided for a county superintendent of public instruction in each county under certain conditions, and also providing that, in counties having no superintendent, the county judge shall be ex officio county superintendent of public instruction, giving him the same powers as a county superintendent. In section 39 of the act, it is provided: "The county superintendent shall approve all vouchers legally drawn against the school fund of his county. He shall examine all contracts between the trustees and teachers of his county, and if in his judgment such contracts are proper, he shall approve the same; provided, that in considering any contract between a teacher and trustees he shall be authorized to consider the amount of salary promised to the teacher." It is clear that the section in question enjoins upon the county superintendent the duty of examining all contracts between trustees and teachers, and invests him with the discretion of determining whether such contracts are proper and approving the same if he so finds. That power carries with it the authority to refuse to approve any contract not deemed proper by him, and in addition, in passing upon the propriety of the contract, he is given special authority to consider the amount of salary promised to the teacher. The Legislature evidently intended to clothe the county superintendent with revisory power over the contracts between trustees and teachers. He was placed as a check upon the power of trustees to make contracts, and protect the people of his county from ill-advised contracts which might waste the public school funds, or impose upon a community a teacher totally unfit, from a moral standpoint, to have charge of the young, or incapacitated in any other way to teach. If his examination of such contracts would amount to nothing but a perfunctory duty, there would be no reason for the law, and, taking the section in question alone, there can be no hesitation in declaring that the superintendent of public instruction is clothed with full power and discretion to examine and decide as to the propriety of every contract between trustees and teachers, and to approve or reject them as his sound judgment may direct. Without such power the people of a county would be powerless to protect themselves from having their school fund dissipated, and their children placed in the care and custody of utterly unworthy, if not vicious, persons. The Legislature could not have intended that a county superintendent should be a mere figurehead, and that the school affairs of the county should be conducted by the trustees of the different school districts. The section in question, with others, makes the county superintendent the head of the educational system of the county, and no part of his duty is so important as that of supervising the contracts between trustees and teachers. It is true that school trustees are clothed with the authority to employ and dismiss teachers, but in each case their action is subject to revision by the county superintendent. "They shall contract with teachers and manage and supervise the schools, subject to the rules and regulations of the county and state superintendents." In section 72 of the act it is provided that: "Trustees of districts shall make contracts with teachers to teach the public schools of their respective districts, but the compensation to teachers under written contract with the trustees shall be approved by the county superintendent before the school is taught, stating that the teacher will teach such school for the time and money specified in the contract." The language is obscure and somewhat confusing, but if we transpose portions of it so as to read "but the compensation to teachers under written contract with the trustees stating that the teacher will teach such school for the time and money specified in the contract shall be approved by the county superintendent before the school is taught," the meaning becomes clear-

er. We fail to discover in the section any desire or intent upon the part of the legislators to confine the duties of the superintendent as to contracts merely to a revision of the matter of salary. To read such an intent into section 72 would create a conflict with section 39, and strip the county superintendent of most of his powers in connection with contracts with teachers.

[2] In construing a statute, the general intent must be kept in view, and the whole and every part must be considered in order to harmonize all of the parts. In the act in question the intent was to place the superintendent at the head of educational affairs in his county, and the powers given him must be so construed as to maintain and promote that intent. The evident intent, as clearly expressed in section 39, was to give the superintendent supervisory control over contracts of teachers, and for any good reason he could reject a contract. Of course the superintendent must exercise a sound discretion, and, if there is an abuse of his discretion, redress could be obtained in court.

[3] The writ of injunction was not sought on the ground that the county judge has abused his discretion, but on the ground that he had no authority to reject a contract made by the trustees and teacher, unless it was for the reason that the salary contracted for was excessive. We cannot sustain that view of the law, but we are of the opinion that the county judge can refuse to approve such contract for any good and sufficient reason, and some of the reasons given by him were sufficient to sustain his action in rejecting the contract. No man should be permitted to teach the young of the state who would use the school money for one purpose and report that he used it for another, or who would collect the school fund and fail and refuse to account for it, and who is under criminal charges for appropriating such fund. Even if the county judge had no authority to disapprove of the contract only on the ground of the amount to be paid the teacher, the reasons given by him show that he disapproved it on that ground also. He stated as one of his reasons that appellee was employed for nine months while the other teachers were employed for only eight months, at the end of which time the teachers would quit and the school necessarily come to an end. He also stated that the salary of $177.75 and free use of a house worth a rental of $10 to $15 a month was too much, and that he did not consider it "proper." He states that he did not reject the contract on account thereof, but the reason was a good one, and the people he represents should have the benefit of his findings thereon, and have the contract disapproved.

No proper ground was set out in the petition for injunction, and it should have been refused. It is the order of this court that the judgment of the district court be reversed, and the temporary injunction dissolved and set aside, and that appellant recover all costs in this behalf expended.