## WHITE v. PORTER et al.
### No. 4721.

Court of Civil Appeals of Texas. Texarkana.
Dec. 12, 1934.

Rehearing Denied Dec. 20, 1934.

O. B. Pirkey, of New Boston, and Wm. V. Brown, of Texarkana, for appellant.

O. H. Atchley, of New Boston, for appellees.

LEVY, Justice.

■■ The appellees have filed a motion to dismiss the appeal, contending that since the school term for which the contract was made has expired, that the questions involved have become moot.

The particular controversy here involves the rights of Miss White in the matter of collecting her salary due in payment for her services in teaching the school under a valid and enforceable contract, specifying amount of agreed upon compensation. Her rights and adjudication thereupon do not cease with the school term, but depend entirely upon judgment of the court. The enforcement of the judgment in all its terms and direction legally exists upon its rendition and at the time of its rendition and against the school officials, presently and their successors in office. A mandamus runs against officials and not parties in individual capacity.

### On the Merits.

C. C. Porter is the duly elected, qualified, and acting county superintendent of public schools of Bowie county. F. D. Crook, T. M. Gunter, and E. C. Anderson are duly elected, qualified, and acting trustees of Leary Common School District No. 67 of said county. Miss Martha White and Miss Rachel Jones each hold a certificate duly registered authorizing them to teach school in the elementary grades of the public schools of Texas, and are not in any way disqualified to teach in said Common School District No. 67 of Bowie county. Mr. E. C. Anderson was elected at the April, 1933, election of trustees. After his election and prior to May 1, 1933, the time fixed by law for him to enter upon the discharge of the duties as such trustee, there was manifested a difference of opinion between Mr. Crook, Mr. Anderson, and Mr. Gunter as to whom they would prefer to employ as teachers. Mr. Anderson and Mr. Gunter each signified the preference for Miss White, and Mr. Crook signified the preference for Miss Jones. A petition seems to have been drawn up and circulated, the exact nature of which is not made clear in the record, but it appears to have had for its purpose to prevent Mr. Anderson from qualifying or to oust him as such trustee. Upon notice from the county superintendent to do so, Mr. Crook, Mr. Anderson, and Mr. Gunter met on April 26, 1933, with the county superintendent in his office at the county seat, outside the territorial boundaries of said common school district, and the following agreement was there entered into:

"4–26–1933.

"We hereby agree to the employment of Miss Rachel Jones in the Leary School, and to the employment of two other teachers in the white school to be named by Mr. Gunter and Mr. Anderson and Mr. Crook, all contracts to be signed by all three, Miss Jones' contract to be signed May 1, 1933. It is agreed that a fourth white teacher is not to be legally and finally employed till after August 1, 1933.

"It is agreed that all litigation in regard to Mr. E. C. Anderson's eligibility as trustee be dropped and the petition withdrawn, so far as F. D. Crook is concerned.

"[Signed]  E. C. Anderson
"T. M. Gunter
"F. D. Crook.
"Witness: C. C. Porter."

Mr. Anderson and Mr. Gunter subsequently decided not to carry out the above agreement to employ Miss Jones, for the reason, as they claim, that circulation of said petition was continued after the agreement was signed. No contract of employment was actually signed with Miss Jones by the trustees as called for in the agreement on May 1, 1933, or at any other time. The number of scholastics in Leary Common School District authorizes the employment of three white teachers. The three trustees signed a contract with Miss Edwards to teach first place, and a contract was signed by Mr. Gunter and Mr. Anderson with Mr. Howell to teach the second place. These two contracts were filed with and approved by the county superintendent. It was agreed upon by Mr. Gunter and Mr. Anderson, but not consented to by Mr. Crook, that Miss White should be employed for the third place. On the date of June 26, 1933, the two trustees, Mr. Gunter and Mr. Anderson, signed a written contract with Miss White to teach in the school for the 1933–34 term. The contract was signed in triplicate by the two trustees and the teacher named, on form prescribed by the school authorities of Texas, and regular in terms. It was filed with the county superintendent on August 31, 1933, for his approval. No action with respect to approval of the contract appears to have been taken by the county superintendent until September 29, 1933. The county superintendent being of the opinion that the agreement above quoted entered into on April 26, 1933, by and between Mr. Anderson, Mr. Gunter, and Mr. Crook, was legally sufficient to constitute a contract of em-

ployment of Miss Jones to teach the third place in said school, and it being prior in point of time to Miss White's contract, and there not being a sufficient number of scholastics in the district to authorize the employment of a fourth teacher, he then indorsed upon Miss White's contract the following: "Insufficient net •scholastics (under 96) for approval, 9–29–1933."

Upon learning of his refusal to approve her contract, Miss White appealed from the ruling of the county superintendent to the county board of school trustees of Bowie county, and Miss Jones was made a party defendant with the county superintendent in said appeal. On hearing of the appeal before the county board, the attorneys for Miss White and the county superintendent made and signed the following stipulations and agreement:

"In re: Appeal of Miss Martha White from decision and ruling of County Superintendent refusing approval of teacher's contract with Leary School Trustees, hearing had on Oct 11th, 1933, before the County Board of School Trustees.

### "Agreement.

"It was agreed at the hearing of the above matter that Leary C. S. D. is entitled to have only three white teachers for the 1933-34 term. That two teachers are employed, over whose status and right to teach is not questioned. That Miss Rachel Jones and Miss Martha White are each claiming a valid contract to teach in the third place in said Leary School. That both Miss Jones and Miss White are qualified to teach in said school so far as certificate, etc., are concerned. That if the agreement of April 26th, 1933, signed by F. D. Crook, T. M. Gunter and E. C. Anderson is sufficient to constitute a contract with Miss Jones to teach said school, she is first in time. That the only reason for the refusal of the Superintendent to approve the contract of Miss Martha White is that he considers said agreement sufficient to constitute a contract of employment with Miss Jones; therefore, there is no place to fill, authorizing the employment of Miss Martha White, otherwise her contract could and would have been approved by the County Superintendent."

The ruling of the county board of school trustees was in favor of Miss White and against Miss Jones, overruling the decision of the county superintendent in his action refusing to approve Miss White's contract, and entered its order approving the contract of Miss White as of date September 6, 1933. Miss Jones did not appeal from the action of the county board. The county superintendent appealed from the action of the county board to the state superintendent of public instruction, whose decision reversed the decision of the county board of school trustees and upheld the decision of the county superintendent. Miss White appealed from the state superintendent to the state board of education, and the decision of the state board of education upheld the ruling of the state superintendent.

Whereupon this suit was instituted in the district court of Bowie county by Miss White as plaintiff praying for judgment of mandamus against the defendant, C. C. Porter, as county superintendent of public schools of said county, directing and commanding him to approve the contract of Miss White. Miss Rachel Jones was made a party defendant with the county superintendent upon allegations of plaintiff, in substance and effect, that Miss Jones claimed to have a contract for the same place or position in said school as the one claimed by plaintiff, to wit, third place; that the funds of said school are insufficient to pay a fourth teacher, or to pay but one teacher for third place for which both plaintiff and Miss Jones were claiming to hold valid contracts; that Miss Jones was claiming under the agreement above quoted, and that it did not constitute a contract of employment, and that plaintiff holds the only valid contract for the contested place; that, knowing that Miss Jones did not have a contract of employment to teach in said school, and relying upon the statement and agreement of the county superintendent, above quoted, that his only reason for not approving plaintiff's contract was that he considered that Miss Jones had a valid contract, which was first in point of time to that of plaintiff, to teach said place, and that if Miss Jones did not have a valid contract he would approve plaintiff's contract, and relying upon the further advice and request of a majority of the trustees of said district to do so, plaintiff began and has continuously been teaching in the school since its opening. In addition to her prayer for mandamus requiring the county superintendent to approve her contract plaintiff further prays for judgment decreeing her rights in the premises superior to any of Miss Jones, and that the funds of said school, for the place in question, be held and decreed subject to the payment of the plaintiff's salary in preference to any claim of Miss Jones.

Defendants answered by general demurrer, and special exceptions; and, as reasons for the county superintendent's refusal to ap-

prove plaintiff's contract, alleged, in addition to the reason assigned before the county board of school trustees, that Miss White's contract was not made at a regular board meeting of the trustees, nor at a special board meeting of which previous notice had been given to each and all the trustees; that plaintiff's contract was executed by the trustees on condition that it was effective only in the event that there should be sufficient scholastics authorizing the employment of a fourth teacher; that in the exercise of his discretion the county superintendent considered it to the best interest of the Leary school, its patrons, and scholastics to refuse to approve plaintiff's contract, "in order to prevent any possible controversy that could or might embarrass the patrons, trustees or scholastics, of the district, and which possible controversy or embarrassing situations would tend to divide the Leary community and consequently at least partially destroy the cooperation of the patrons of said school."

A trial was had before the court without a jury, and judgment was rendered in favor of the defendants, that the plaintiff take nothing by the suit. The plaintiff has appealed from the judgment.

### Opinion.

■ Plaintiff pleads in effect an unauthorized refusal on the part of the county superintendent to approve a valid contract to teach a public school which, if supported in evidence, legally authorizes the relief prayed for. Upon such alleged state of facts, after the appeal to the school authorities as prescribed by statute is exercised, the issue is one as to the legal rights of the party, a judicial question which the parties have the right to have finally heard and determined by the courts. Los Angeles Heights Independent School District v. Whitehead (Tex. Civ. App.) 34 S.W.(2d) 895; Miller v. Smiley (Tex. Civ. App.) 65 S.W.(2d) 417; Boyles v. Potter County (Tex. Civ. App.) 177 S. W. 210; Johnson v. City of Dallas (Tex. Civ. App.) 291 S. W. 972. Hence the demurrer and exceptions to the petition were properly overruled.

The reasons entered by the county superintendent for not approving the contract, as rendering the contract invalid, stated in substance, are: First, that the agreement between the trustees signed April 26, 1933, constituted a contract of employment with Miss Jones, prior in point of time, and the number of scholastics did not authorize employment of a fourth teacher. Second, that Miss White's contract was not made at a regular board meeting of the trustees, nor at a special board meeting of which notice had been previously given to each and all the trustees. Third, that at the time one of the trustees signed Miss White's contract there was a memorandum attached to it and reading to the effect that the contract was conditioned on there being sufficient scholastics transferred into the district permitting the employment of a fourth teacher.

■ As to the first reason, it may be conceded that if the agreement signed by the trustees on April 26, 1933, is sufficient to constitute a valid contract of employment of Miss Jones to teach in the school, it being prior in point of time, and there being two other white teachers already employed, then Miss White's contract was unauthorized for want of sufficient number of scholastics in the district to authorize the employment of a fourth teacher. The agreement in question, however, does not purport to be a completed contract of employment with Miss Jones. By its terms it is only an agreement strictly between the trustees themselves as to the course they would later pursue in reference to hiring teachers. That as to Miss Jones they would all three agree to execute a contract at a later date of May 1, 1933, of employment as a teacher. It could have no more force than the mere statement of intention on the part of the trustees to do something in the future respecting their official duties. Such mere statement of intention made by trustees is not such offer as in the eye of the law admits of being turned into binding promise by acceptance. No contract was actually signed with Miss Jones.

■ As relating to the second reason, it may be considered that Miss White was not elected or employed at a "regular board meeting" as that term is ordinarily understood, nor at a special board meeting held after notice thereof had been served upon all three of the members. No regular or stated times for meetings of the trustees is shown to have in point of fact been set or agreed upon by the trustees. The trustees in point of fact never held but one meeting at which all three members were present, and at that meeting only one white teacher was elected. Miss White was not employed at that meeting. As proven, two of the trustees subsequently met informally and without notice to the third trustee, and agreed upon the employment of Miss White. The two trustees on June 26, 1933, signed a written contract with Miss White to teach in the school for the 1933–34 term. It merely appears that trustee Gunter was not actually present when the written contract with Miss White was actually signed by

trustee Anderson, but trustee Gunter did sign it at a different time and place and trustee Anderson was present when Mr. Gunter signed the contract. The two trustees are not seeking to avoid the contract, they declare its execution genuine and in good faith. No fraud, imposition, or mistake is in any wise claimed in its execution. It is believed that the particular irregularity leading up to the execution of the contract would not afford legal basis for refusal to approve it. Such facts will not vitiate the written contract. The mode of employing teachers by trustees of common school districts, as distinguishable from independent districts, is prescribed by article 2750, R. S., which provides: "Trustees of a district shall make contracts with teachers to teach the public schools of their district, but the compensation to a teacher, under a written contract so made, shall be approved by the county superintendent before the school is taught, stating that the teacher will teach such school for the time and money specified in the contract."

The election or employment of a teacher in board meeting, regular or special, is not prescribed by the statute as an essential prerequisite to the validity of the written contract between the trustees of a common school district and a teacher to teach the school. Its only essential is that it shall be made by the trustees with the teacher in writing, stating that the teacher will teach such school for the time and money specified in the contract. The matter of board organization and action under adopted rules, regulations, and by-laws is not enjoined upon trustees of a common school district, as is provided for in independent districts by articles 2779, 2780, R. S., and art. 2781, as amended by Acts 1930, 5th Called Sess., c. 8, § 1 (Vernon's Ann. Civ. St. art. 2781). And the omission from such statutory provisions of common school districts would imply the legislative intent to not have such strictness of procedure apply to common school districts in employing teachers.

As relating pertinently to the third reason assigned, as ground for invalidating Miss White's contract, trustee Anderson testified that at the time he signed the contract he was at his home and that trustee Gunter was not there, and that there was written and attached to the contract at the time a memorandum to the effect that Miss White was to be employed for the fourth place in the event there should be a sufficient number of scholastics. That it was thought at that time that Miss McCullom would be assigned to teach the third place and Miss White would be assigned to teach the fourth place in the

event of sufficient scholastics, but that Miss McCullom accepted employment in another district and then Miss White was selected to teach the third place. It appears that the memorandum was not on the contract when finally executed and delivered for approval; and it is the undisputed testimony of the two trustees signing the contract that the employment of Miss White as teacher, as finally consummated on June 26, 1933, was intended and fully understood to be to fill the third place in the school. As appears, the county superintendent did not learn of the memorandum until the time the appeal from refusal to approve the contract was heard before the county board of school trustees. The mere fact that pending negotiations of Miss White's employment, it was intended by the trustees, or one of them, that she would be employed only in the event of the fourth place, and in that view attached a memorandum of such condition to the contract, but which memorandum was not attached to nor intended to be a part of the contract when finally executed and delivered to the superintendent for approval would not affect the validity of the written contract as finally consummated and delivered under the mutual intention of the parties.

Although, as it appears from his testimony, the county superintendent stated that he had other reasons for not approving the contract, yet evidence with reference to such other reasons was not offered. Any undisclosed objection not appearing of record may not be considered in this appeal as constituting a valid reason in law for the refusal to approve the agreed upon contract.

Although we have given special consideration to all the objections assigned as reasons for refusal to approve the contract, yet, it may be observed, it is thought, that, as a matter of pure law, a county superintendent may not go behind a duly executed written contract between the trustees and a teacher and refuse its approval upon matters of mere irregularity in the proceedings and negotiations leading up to the final consummation of that written contract.

It is further shown that plaintiff, relying upon the written contract, and upon the instruction of the trustees to do so, began at the opening of the school to teach and has continuously taught the school. In virtue of such facts, she would be entitled to have granted her further prayer to have the agreed upon compensation to be paid to her out of the funds already allotted and set aside to such school district and such funds declared subject to the payment of her salary.

Appellees have filed cross assignments of error to the action of the trial court in overruling their demurrer and special exceptions to plaintiff's petition. The demurrer and exceptions challenge plaintiff's petition upon the ground that the allegations therein were controlled and foreclosed by contradictory recitals in exhibits attached to the petition. That the recitals of the exhibits attached to the petition control over allegations to the contrary in the petition. In connection with the allegation showing statutory procedure of prior appeal to the several school authorities had been complied with before filing the petition in the district court, there were attached as exhibits to the petition the final decisions and rulings on the appeals respectively to the county board of school trustees, the state superintendent of public instruction, and the state board of education. In the attached copy of the decision and ruling of the state superintendent, there appears as reasons for overruling the decision of the county board of school trustees that: "(1) Miss Martha White does not have a contract to teach in the Leary School because her employment at the outset was illegal since her contract was not made and signed in accordance with law" (in that it was not shown to have been made and signed at a regular board meeting of the trustees, or at a special meeting held after due notice had been given to all members); "(2) that Miss Martha White does not have a valid contract to teach in the Leary School because her contract was not approved by the County Superintendent." It is contended by appellees that the above-quoted recitals to the effect that plaintiff's contract is invalid, being contained in an exhibit, controls over allegations to the contrary in the body of the petition. Under District Court Rule 19 (142 S. W. XVIII), only notes, accounts, bonds, mortgages, and other instruments, or copies thereof, constituting in whole or in part the cause of action sued on, may be properly made exhibits as a part of plaintiff's petition. The instrument upon which plaintiff's cause of action is based in this case is her written contract with the trustees, not the ruling of the state superintendent, of which the exhibit in question is a copy. The ruling of the state superintendent did not constitute plaintiff's cause of action sued on, or any part of it. Therefore, the exhibit was not an authorized one, and, under the established rule, could not be considered in testing the sufficiency of the petition. City of Paris v. Bray, 107 Tex. 188, 175 S. W. 432.

The further cross assignments of error made by appellees are predicated upon the ruling of the court in not sustaining a demurrer and special exceptions to plaintiff's petition, upon the ground, in substance, that the act of the county superintendent in approving or declining to approve a teacher's contract involves the exercise of discretion, and that mandamus will not lie to direct the manner of its performance. It is quite correct that generally the rulings of school authorities, within the scope of powers delegated to them, which involve the exercise of discretion, when such discretion is reasonably exercised, will not be disturbed by the courts. Charles Scribner's Sons v. Marrs, 114 Tex. 11, 262 S. W. 722. There may arise special circumstances that would require and invoke the exercise of discretion on the part of the county superintendent in approving or declining to approve a teacher's contract, and it would be in such circumstances that his ruling may not be disturbed unless an abuse of such discretion is shown. But the act of approving or declining to approve a teacher's completed and valid contract to teach school does not necessarily in all events call for and invoke the exercise of discretion. If the special facts and circumstances in the given case give rise to no valid reason or ground in law for his refusal, then it becomes his official duty, entirely nondiscretionary and ministerial in character, to approve the contract, and, upon refusal, to approve the same mandamus will lie to direct its performance. Article 2693, R. S., cited by appellees, does not vest in the county superintendent the unrestrained power to decline, at his will and without lawful reason, to approve a valid contract with a school teacher, when it is proper in form and substance and duly executed by the trustees. To hold otherwise would render void the power and authority vested by article 2750, R. S., in the trustees to select from the qualified applicants the teacher of their choice, and to make the proper contract with such teacher to teach the school term.

It is concluded that upon the record, the facts being conclusively established, judgment should be rendered in favor of appellant, Miss Martha White, adjudging that the contract in evidence between her and the school trustees is in all things legal and valid and superior in right to any of appellee Miss Rachel Jones to teach the Leary school term of 1933–34, and that the agreed upon compensation to be paid her as teacher be paid out of the school funds allotted and set aside to such school, and that such funds be held and subjected to the compensation, and adjudging further that the appellant, Miss Martha White, is entitled to the award and

issuance of a peremptory mandamus as against C. C. Porter, as county superintendent, directing and commanding him to approve as of date August 31, 1933, the contract of appellant, Miss Martha White, to teach school in the Leary Common School District No. 67 of Bowie county, Tex., for the school term 1933–34, and directing and commanding him to set aside and disburse the school funds allotted to said district in priority only for the payment of the appellant, Miss Martha White, in the approved salary of $75 per month as teacher. Therefore it is ordered that the judgment of the trial court be reversed and the cause be remanded with binding instructions to the trial court to enter the judgment as above settled and to include therein the award and issuance of a peremptory mandamus compelling the county superintendent, C. C. Porter, and his successors in office, to do and perform each and all the acts herein specifically set forth to be done by the county superintendent. The appellees jointly and severally will pay the cost of appeal to this court.