## CARLILE v. PEEVY et al.

### No. 2276.

Court of Civil Appeals of Texas. Waco.

Feb. 15, 1940.

Rehearing Denied March 21, 1940.

Williford, Williford & Bond, of Fairfield, and L. W. Shepperd, of Groesbeck, for appellant.

Geppert, Geppert & Victery, of Teague, for appellees.

TIREY, Justice.

Mrs. L. E. Peevy, joined pro forma by her husband, brought this suit for mandamus to compel appellant, Miss Shelma Carlile, County Superintendent of Public Schools for Freestone County, Texas, to approve a contract of employment made by a majority of the trustees of Pyburn Common School District No. 30 in Freestone County with appellee as an elementary teacher for a term of seven consecutive months for the school term of 1939-40. The cause was tried before the court without the intervention of a jury and the court ordered the writ of mandamus to issue, requiring the appellant to approve the contract. This is an appeal from said judgment.

Plaintiff's petition is ample to support the judgment awarded to her. A plea of intervention was filed by the Pyburn Common School District, by and through a majority of its trustees, in which they set out that they entered into the written contract in question with the plaintiff to teach in said school, and they adopted the pleadings of plaintiff on which she went to trial, and asked that plaintiff's contract be approved, and that she have judgment as prayed for in her pleadings. The defendant answered substantially to the effect that in refusing to approve the contract in question she acted in her official capacity and in the discharge of her duties as such, and in doing so she exercised that discretion vested in her by the statutes of the State of Texas, and that she was not acting arbitrarily nor dictatorily, but was acting for reasons deemed by her to be good and sufficient. She further averred that the said District had been classified by the County Board as an eleven grade school, which classification was and is necessary in order to include all pupils in said District remaining untransferred, thereby giving said school the greatest number of scholastics possible, and averring that appellee holds a certificate entitling her to teach in the "elementary grades" only. She further alleged that the contract in question was ill-advised and that it would entail a waste of public funds, and that her refusal to approve same was and is to the best interests of the pupils, patrons, taxpayers and citizens of Pyburn Common

School District No. 30 in Freestone County, Texas.

The court in its judgment found substantially the following facts: That on the 26th of April, 1939, the said School District, acting by and through a majority of its school board, made a written contract with plaintiff, employing her as an elementary teacher in said school for a term of seven consecutive months of the school term for the year 1939–40, at a salary of $595; that said contract is in the regular form prescribed, and that said contract is legal as to both form and substance; that plaintiff is the holder of a valid permanent first grade teacher's certificate; that she is a person of good moral character and is in every way qualified to teach in the elementary grades of the public schools, and that she is an efficient teacher; that said School District was by the County School Board of Freestone County duly classified to teach the elementary grades for the school year 1939–40; that before the execution of the written contract in question said school board, acting by a majority of its trustees, decided that only the elementary grades would be taught in said school for white children for the year 1939–40 school term; that plaintiff duly filed her teacher's certificate and her teacher's contract with the county superintendent, as provided by law, and that the county superintendent, on the 2d of October, 1939, without legal excuse and without legal cause but acting arbitrarily, did disapprove said written contract; that plaintiff duly appealed to the County School Board of Trustees for Freestone County, Texas, and that said Board considered said appeal and in acting thereon failed and refused to order the superintendent to approve said contract and did make and enter an order affirming the action of the county superintendent in disapproving said written contract; that plaintiff elected to appeal from the decision of the county board to the District Court of Freestone County, and that she duly perfected her appeal to said court; that the approving of the written contract in question will not create a deficiency in the school fund of said common school district; that at the time of the execution of the written contract in question neither the plaintiff nor the trustees who executed the contract for said Board knew that any of the patrons of said District desired that said school be contracted for the said term to an adjoining school district, and that the contract in question was made in good faith; that the plaintiff is the only teacher employed by said school district to teach the elementary grades of the white school; that the school board instructed the plaintiff to begin teaching on October 2, 1939, and has been since said date engaged in the performance of her contract.

The action of the trial court in awarding a writ of mandamus has been assailed on two grounds:

"1. Mandamus will not lie to compel appellant to approve appellee's contract to teach in the Pyburn School District No. 30, for the ensuing scholastic year, appellant being a public officer and such approval calling for the exercise of the judgment of appellant on matters of fact.

"2. The Legislature of the State of Texas has clothed appellant, she being County Superintendent of Public Instruction of Freestone County, Texas, with supervisory power over the contracts between trustees, teachers and others as a check upon the powers of such trustees to make contracts and if in the opinion of appellant, supported by any pertinent matter before her at the time, she acted in refusing to approve appellee's contract, her action will not be disturbed in any court."

The question presented by appellant's brief raises one of some difficulty due to the fact that the decisions of the Courts of Civil Appeals considering the point in question appear to us to be in direct conflict. The statutes governing the point in question are Articles 2678a, 2682, 2690, 2693, 2709, 2749, 2750 and 2750a, Vernon's Ann.Civ.St. Article 2693 provides, in part, that the county superintendent "shall examine all the contracts between the trustees and teachers of his county, and if, in his judgment, such contracts are proper, he shall approve the same; provided, that in considering any contract between a teacher and trustees he shall be authorized to consider the amount of salary promised to the teacher." In discussing this statute, the San Antonio court, in Thomas v. Taylor, 163 S.W. 129, 131, writ refused, said: "If his examination of such contracts would amount to nothing but a perfunctory duty, there would be no reason for the law, and, taking the section in question alone, there can be no hesitation in declaring that the superintendent of public instruction is clothed with full power and discretion to examine and decide as to the

propriety of every contract between trustees and teachers, and to approve or reject them as his sound judgment may direct." The foregoing construction has been followed by the El Paso Court of Civil Appeals in the case of Vanlandingham v. Hill, 47 S.W.2d 641. The same question was again before the San Antonio court in Duncan v. Bowman, 22 S.W.2d 683, writ dismissed. Other decisions implying that the statutes in question vest in the county superintendent judicial discretion are: Hill v. Smithville Independent School Dist., Tex.Civ.App., 239 S.W. 987; Boyles v. Potter County, Tex.Civ.App., 177 S.W. 210; Ratcliff v. Buna Independent School Dist., Tex.Civ.App., 46 S.W.2d 459; Caviel v. Coleman, 72 Tex. 550, 10 S.W. 679, 680; Isbill v. Stovall, Tex.Civ.App., 92 S. W.2d 1067. A contrary doctrine has been announced by the Galveston court in Miller v. Smiley, 65 S.W.2d 417, writ refused, and by the Texarkana court in White v. Porter, 78 S.W.2d 287.

Notwithstanding the findings the trial court made in his judgment, the record is uncontradicted that the county superintendent had before her at the time she refused to approve the contract in question a petition signed by forty of the resident citizens of said school district, in which they asked her not to approve said contract, and set up that they had petitioned the county board of education during the year 1939 to discontinue the white school in such district and contract such white school to the Teague Independent School District; that said petition also set out that out of the thirty-three white scholastics in said district, twenty-three had been transferred out of the same, and that all of such twenty-three scholastics are now enrolled and attending the Teague school except two children who have moved out of the district; and also set out that a majority of the patrons of such district desire that all children attend the Teague school where they will have nine months school and where better educational opportunities can be had than in said common school district. In addition thereto, she had before her a petition signed by forty-two patrons of said school district, in which they set out that they wished to discontinue the white school in said district and contract all classes to the Teague Independent School District for the school term 1939–40. In addition thereto, the record seems to be uncontroverted that the minutes of the school board of trustees of Freestone county, Texas, show "the classification of the Pyburn school was changed from classification given it on May 27, 1939, and that it was classified on October 2, 1939, to teach eleven grades." There is nothing in the record to indicate by whom the classification was made on May 27, 1939, nor what it was. It is true, however, that there was testimony uncontradicted to the effect that the Pyburn School Board had before it entered into the contract in question with the plaintiff of date April 26, 1939, agreed to teach only the elementary grades up to the seventh grade. The record is uncontroverted that there were thirty-three white scholastics in the district and that twenty-three had been transferred to the Teague district, and that of the ten white scholastics not transferred, two of the same were children above the elementary grades. In addition thereto, she (the county superintendent) had before her the budget for the year 1939–40, and she testified (without contradiction) that there was no set-up in said budget for paying any salary for a white teacher for said school term. In connection with the budget, she had before her the certificate of R. A. Pickett and J. D. Henderson, two of the trustees of said district, dated September 30, 1939, which was as follows: "This is to certify that we, R. A. Pickett and J. D. Henderson, trustees of the Pyburn Common School District #30, Freestone County, Texas, were in the office of Shelma Carlile, County Superintendent of Public Instruction, Freestone County, Texas, at which time she went over the budget for Pyburn district with us very fully and that we did not recommend any change in the budget which she had estimated for our district."

The contract of the plaintiff was filed with the County Superintendent on September 28, 1939. In addition thereto, the evidence is uncontradicted that when plaintiff opened the school she had six pupils and at the time of the trial she had two pupils.

Under Article 2678a the classification of schools is vested solely in the county board of school trustees. Article 2690 of the Statutes, in part, provides: "The county superintendent shall have, under the direction of the State Superintendent, the immediate supervision of all matters pertaining to public education in his county. He shall confer with the teachers and trustees

236

and give them advice when needed, visit and examine schools, and deliver lectures that shall tend to create an interest in public education. He shall spend four days each week visiting the schools while they are in session, when it is possible for him to do so. *He shall have authority over all of the public schools within his county, except such of the independent school districts as have a scholastic population of five hundred or more.*" (Italics ours.) In Article 2693, it is provided that the superintendent shall examine all of the contracts between teachers and trustees of his county, "and if, *in his judgment,* such contracts are proper, he shall approve the same; *provided, that in considering any contract between a teacher and trustees he shall be authorized to consider the amount of salary promised to the teacher.*" (Italics ours.) In Article 2749, it provides, among other things, that "they [meaning the trustees] shall contract with teachers and manage and supervise the schools, subject to the rules and regulations of the county and State Superintendents." Article 2750a provides: "That trustees of any common school district or consolidated common school district shall have authority to make contracts for a period of time not in excess of two (2) years with principals, superintendents, and teachers of said common school districts or consolidated common school districts, provided that such contracts shall be approved by the County Superintendent. No contract may be signed by the trustees until the newly elected trustee has qualified and taken the oath of office." It will be noted that each of Articles 2693, 2750 and 2750a provide that the contracts of the trustees shall have the approval of the county superintendent. It will also be noted that Article 2693 further provides "that in considering any contract between a teacher and trustees he shall be authorized to consider the amount of salary promised to the teacher." In Article 2749 it is provided that "they [meaning trustees] shall contract with teachers and manage and supervise the schools, subject to the rules and regulations of the county and State Superintendents." We think it is singular that the legislature, in the same chapter with Articles 2690 and 2693, expressly gave supervisory powers to the district court in certain cases. Article 2682 provides: "The district court shall have general supervisory control of the actions of the county board of school trustees in creating, changing and modifying school

districts." No such authority appears to have been given to the district court in the management of the school and the selection of its teachers. Surely, the legislature must have had in mind some duty and discretionary power on the part of the county superintendent in cases where fact issues arose between the trustees and the patrons of the school. We believe that a careful consideration of these statutes shows that the legislature intended to give to the county superintendent discretionary power with reference to the supervision and administration of the common public schools. That seems to have been the construction placed upon the statutes in question by the San Antonio and El Paso Courts of Civil Appeals, and we believe the reasons therefor are sound and that the weight of authority is in support thereof. We realize that the decision of the Galveston court in Miller v. Smiley, 65 S.W.2d 417, writ refused, and of the Texarkana court in White v. Porter, 78 S.W.2d 287, are in apparent conflict with the construction placed on the statutes under consideration by the San Antonio and El Paso courts, but in the Smiley case the teacher's contract in question had been signed by all three of the trustees and thereafter two of the trustees made and executed another contract with another teacher and the county superintendent approved the latter contract and refused to approve the first contract on the ground that the first contract was invalid as a matter of law. In the White v. Porter case, the sole question was the legality of the contract that was presented to the county superintendent. We are frank to admit that we are unable to reconcile the holding (and certainly, the statements) contained in the Smiley and White cases with the holding of the San Antonio court in Thomas v. Taylor, supra, and the El Paso court in Vanlandingham v. Hill, supra. However, we are of the opinion that the rule announced in Thomas v. Taylor, supra, is in accord with the spirit and expressed intention of the legislature in the provisions it has made for the conduct and supervision of the common schools of the state, and we are of the opinion that the statutes herein discussed have clothed the county superintendent with discretionary power. We therefore hold that the county superintendent had the right and power to reject the contract in question if her sound judgment so directed her to do. Moreover, the classification of the common schools seems to have been delegated solely

to the county board of school trustees, under the provisions of Article 2678a of our statutes, and that classification having been made by said county board aforesaid, it was binding on the county superintendent, and the record is uncontroverted that the plaintiff's certificate authorized her to teach only the elementary grades.

Appellant's assignments of error are therefore sustained and the judgment of the trial court is reversed and judgment here rendered refusing the mandamus prayed for by appellees.

ALEXANDER, Justice (dissenting).

I am unable to agree with the holding in the majority opinion. The only material question to be determined is whether a county superintendent is vested with discretionary authority to approve or disapprove a teacher's contract in accordance with what he conceives to be the best interests of the school, or whether he is required to approve such contract when same has been lawfully executed.

Revised Statutes, art. 2749, expressly provides that the trustees of the school district shall have the management and control of the public school and public school grounds, and shall have the authority to employ and to contract with teachers and to manage and supervise the schools. This authority, however, is subject to certain limitations. For example, this same Article 2749 provides that the trustees in making contracts with teachers shall not create a deficiency debt against the district. Article 2750 requires that the contract shall bind the teacher to teach such school for the time and money specified therein. Article 2885 gives the different classes of teachers' certificates; and Article 2887a, Vernon's Ann.Civ.St., lists the subjects that may be taught by teachers holding a certificate of a certain class. Article 2750a provides that no contract may be signed by the trustees until the newly elected trustee has qualified. The authority of the county superintendent to approve teachers' contracts will be found in Articles 2750 and 2693. Article 2750 provides, in part, as follows: "Trustees of a district shall make contracts with teachers to teach the public schools of their district, but the compensation to a teacher, under a written contract so made, shall be approved by the county superintendent before the school is taught, stating that the teacher will teach such school for the time and money specifi-

ed in the contract." Article 2693 provides, in part, as follows: "He [the county superintendent] shall examine all the contracts between the trustees and teachers of his county, and if, in his judgment, such contracts are proper, he shall approve the same; provided, that in considering any contract between a teacher and trustees he shall be authorized to consider the amount of salary promised to the teacher."

I think that these statutes, when construed together, mean that the trustees of the district are vested with the authority to manage and control the schools, including the right to employ and contract with teachers, and that this right is absolute and exclusive so long as the contract is lawfully executed. The county superintendent is given the authority to approve the contract for the purpose of assuring its lawful execution. If the contract has not been executed by a majority of the trustees, after the newly elected trustee has qualified, or if the contract does not bind the teacher to teach the school for the time and money specified therein, or if the salary promised would create a deficiency, or if the certificate held by the teacher does not authorize him to teach the subjects for which he is employed or to draw the salary which is promised him, then in either such event the superintendent has a right to refuse to approve the contract; but if the contract meets all of the above requirements and is otherwise lawful, the county superintendent has no right to refuse to approve the contract merely because he does not think it to be for the best interests of the school.

In the case at bar, there is no doubt about the legality of the contract. It was entered into by a majority of the trustees, after the newly elected trustee had qualified. There are ample funds on hand so that a deficiency will not be created. The county school board classified the school in May, as it was required to by Article 2678a, Vernon's Ann.Civ.St. It was classified as an elementary school. The teacher holds a certificate authorizing her to teach the subjects and to receive the salary provided for in the contract, and the contract binds her to teach the school for the time and money provided for therein, and appears otherwise to be in lawful form. The county superintendent has refused to approve the contract, not because of any illegality therein but merely because she and a majority of the patrons have concluded, over the protest of the trustees,

that it would be to the best interests of the school to contract the teaching to a nearby district. I am inclined to the view that it would have been to the best interests of the school to have so contracted the teaching to another school, but this is not a matter for us, nor for the county superintendent, to decide. That is a responsibility imposed exclusively on the trustees. If the patrons are dissatisfied with the management of the present board, their remedy is to elect more efficient trustees. My views on the law question here involved are fully sustained by Miller v. Smiley, Tex.Civ.App., 65 S.W.2d 417, writ refused. See also White v. Porter, Tex. Civ.App., 78 S.W.2d 287; 37 Tex.Jur. 1041.