

# THE ATTORNEY GENERAL
# OF TEXAS

## AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

July 31, 1951

Hon. William L. Taylor
Prosecuting Attorney
Harrison County
Marshall, Texas

Opinion No. V-1225

Re: Validity of a school
superintendent's con-
tract with a rural
high school district
under the circumstances
related.

Dear Sir:

We refer to your request for an opinion of this office concerning the validity or existence of a school superintendent's contract with a rural high school district. You state the circumstances in connection therewith, in substance, as follows:

On March 9, 1951, the trustees of the Hallsville Rural High School District met as a group and voted at that board meeting to re-elect its superintendent for a two-year period. The board minutes for that date reflect such action.

According to the school superintendent, he, at that board meeting, accepted by expressing his appreciation for their consideration and thanked them for renewing his contract. On March 12, the superintendent addressed a letter to the president of the board in which he accepted the job of superintendency tendered to him by the action of the board on March 9.

On March 19, the board again held a called meeting and voted not to elect teachers, including the superintendent, until after the approaching trustee election and the newly elected trustees took office, and voted to cancel the agreement for a two-year contract for the superintendent. Trustee elections were held on April 7, 1951. Art. 2774a, Sec. 4, V.C.S.

The precise question involved herein is:

Can and does there exist a valid oral contract for the school years 1951-1952 and 1952-1953 between the Superintendent and the Board of Trustees of the Hallsville Rural High School District under the submitted facts and laws applicable thereto?

Article 2922k, V.C.S., provides in part:

"All rural high schools within a rural high school district herein provided for shall be under the immediate control of the board of school trustees for such rural high schools, and such board of school trustees shall be under the control and supervision of the county superintendent and county board of school trustees, and shall be subject to the same provisions of law and restrictions that common schools are now subject to, . . ." (Emphasis added.)

According to Bulletin 512 of the Texas Education Agency for 1950-1951, the Hallsville Rural High School District is classified as a common school district. Art. 2922b, V.C.S. By virtue of Article 2922k, it is subject to the same provisions of law and restrictions that common schools are now subject.

Articles 2749, 2750, 2750a-1, and 2693, V.C.S., insofar as pertinent to teacher contract matters of common school districts, apply also to rural high school districts classified as common school districts. Att'y Gen. Op. O-7009 (1946).

Article 2749 provides in part:

"Said trustees /of a common school district/ shall have the management and control of the public schools . . . They shall have the power to employ . . . teachers; . . . They shall contract with teachers and manage and supervise the schools, subject to the rules and regulations of the county and State Superintendents; they shall approve all claims against school funds of their district; provided, that the trustees, in making contracts with teachers, shall not create a deficiency debt against the district."

Article 2750 provides in part:

"Trustees of a district shall make contracts with teachers to teach the public schools of their district, but the compensation to a teacher, under a written contract so made, shall be approved by the county superintendent before the school is taught, stating that the teacher will teach such schools for the time and money specified in the contract.  . . ."

Article 2750a-1 provides in part:

"Trustees of any Common School District . . . shall have authority to make contracts for a period of time not in excess of two (2) years with principals, superintendents, and teachers of said Common School Districts . . . provided that such contracts shall be approved by the County Superintendent.  No contract may be signed by the Trustees of Common School Districts . . . until the newly elected trustee or trustees have qualified and taken oath of office."

Article 2693 provides in part:

"The county superintendent shall approve all vouchers legally drawn against the school fund of his county.  He shall examine all the contracts between the trustees and teachers of his county, and if, in his judgment, such contracts are proper, he shall approve the same; provided, that in considering any contract between a teacher and trustees he shall be authorized to consider the amount of salary promised to the teacher.  . . ."

Under these statutes, written contracts of employment between a common school district and its teachers must be approved by the county superintendent.  Numerous cases have held that a contract not approved by the county superintendent cannot furnish the basis for an action on the contract itself, although the parties might have recourse to an action to compel approval of the written contract in a proper case.  Thomas v. Taylor, 163 S.W. 129 (Tex.Civ.App. 1914, error ref.); Boyles v. Potter County, 177 S.W. 210 (Tex.Civ.App. 1915); Ratcliff v. Buna Independent School Dist., 46 S.W.2d 459 (Tex.Civ.

App. 1932); <u>Miller v. Smiley</u>, 65 S.W.2d 417 (Tex.Civ.
App. 1933, error ref.); <u>Moore Common School Dist. No.
2 v. Frio County Board of School Trustees</u>, 90 S.W.2d
289 (Tex.Civ.App. 1936); <u>Peevy v. Carllle</u>, 135 Tex. 132,
139 S.W.2d 779 (1940). However, no rights accrue to
either party before a formal written contract is exe-
cuted.

In <u>White v. Porter</u>, 78 S.W.2d 287, 290, 291
(Tex.Civ.App. 1934), all the trustees of a common school
district entered, on April 26, 1933, into an agreement
in writing to employ Miss Jones as a teacher. The con-
tract was to be signed on May 1, 1933. No contract was
actually signed with Miss Jones by the trustees on that
date or any other time. Subsequently, on June 26, 1933,
two of the trustees (a majority) signed a written con-
tract with Miss White to teach the school for the 1933-
1934 term on the contract form prescribed by the school
authorities of Texas, and regular in its terms. It was
filed with the county superintendent on August 31, 1933,
for his approval. The county superintendent, being of
the opinion that the agreement of April 26 was legally
sufficient to constitute a contract with Miss Jones to
teach school and it being prior in point of time to Miss
White's contract, disapproved Miss White's contract. Af-
ter proper appeal through the school authorities on the
matter, Miss White in this action sued to mandamus the
county superintendent to approve her contract. Peremp-
tory mandamus was awarded. The court in its opinion
stated:

"The agreement in question, however,
does not purport to be a completed contract
of employment with Miss Jones. . . . It
could have no more force than the mere state-
ment of intention on the part of the trustees
to do something in the future respecting their
official duties. . . . No contract was ac-
tually signed with Miss Jones.

". . . The two trustees on June 26, 1933,
signed a written contract with Miss White to
teach in the school for the 1933-34 term. . . .
The mode of employing teachers by trustees of
common school districts, as distinguishable
from independent districts, is prescribed by
article 2750, R.S., which provides: 'Trustees
of a district shall make contracts with teach-
ers to teach the public schools of their dis-
trict, but the compensation to a teacher, under

Hon. William L. Taylor, page 5 (V-1225)

a written contract so made, shall be approved
by the county superintendent before the school
is taught, stating that the teacher will teach
such school for the time and money specified
in the contract.'

"The election or employment of a teacher
in board meeting, regular or special, is not
prescribed by the statute as an essential pre-
requisite to the validity of the written con-
tract between the trustees of a common school
district and a teacher to teach the school.
Its only essential is that it shall be made by
the trustees with the teacher in writing, stat-
ing that the teacher will teach such school for
the time and money specified in the contract.

Under the facts submitted for consideration in
the matter herein, not only is there absent approval or
disapproval of the county superintendent on the claimed
contract, but there is absent also an executed written
contract between the district superintendent (for the
scholastic years 1951-1952 and 1952-1953) and the trus-
tees of the Hallsville School District. We are of the
opinion that there cannot exist an enforcible valid
teacher contract binding a common school district un-
less the same be in writing and properly signed by its
board of trustees. A formal contract in writing is re-
quired by the above quoted statutes, and is further
necessitated by such statutes as require action of the
county superintendent in such matters. White v. Porter,
supra. In short, an oral teacher contract of a common
school district or an alleged teacher contract based
alone on agreements or elections of its board of trus-
tees evidenced by its minutes or in letters appertain-
ing thereto is not enforcible in our courts. But see
Attorney General's Opinion O-2162 (1940) concerning
teacher contracts of independent school districts.

Accordingly, it is our opinion that, under the
facts submitted, there exists no valid contract between
the trustees of the Hallsville Rural High School Dis-
trict and its present superintendent for the 1951-1952
or 1952-1953 school years, there being no formal con-
tract in writing as required by Articles 2749, 2750,
2750a-1, and 2693, V.C.S., upon which the county super-
intendent must act.

In view of our conclusion that no valid contract
was made, it is unnecessary to consider whether the board

of trustees could have entered into a binding contract before the trustees elected on April 7, 1951, had taken office.  But, in this connection, see Att'y Gen. Op. V-1051 (1950).

## SUMMARY

Articles 2749, 2750, 2750a-1, and 2693, V.C.S., appertaining to employment contracts of teachers and superintendents of common school districts, including rural high school districts classified as common, require the signing of a formal contract in writing, which must be submitted to the county school superintendent for approval.  Until the statutory requirement of an executed written agreement is met, there exists no contract.

Yours very truly,

PRICE DANIEL
Attorney General

APPROVED:

J. C. Davis, Jr.
County Affairs Division

Jesse P. Luton, Jr.
Reviewing Assistant

Charles D. Mathews
First Assistant

*Chester E. Ollison*

Chester E. Ollison

*Bruce W. Bryant*

Bruce W. Bryant
Assistants

BWB:CEO:mw