# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
November 16, 2011Session

## MICHAEL ANDREW CARMAN v. KRISTI MICHELLE CARMAN

**Appeal from the Chancery Court for Macon County**
**No. 4450      C. K. Smith, Chancellor**

---

**No. M2011-01265-COA-R3-CV - Filed March 26, 2012**

---

This is a post-divorce parental relocation case. The mother seeks to relocate to Grand Prairie, Alberta, Canada, with the parties' seven (7) minor children, in order to reside with her new husband, a Canadian citizen she met on the internet. The father opposes the relocation. The mother spends substantially more time with the children, thus Tenn. Code Ann. § 36-6-108(d) applies. Finding there was no reasonable purpose for moving to Canada, that the move would pose a threat of specific and serious harm to the children, and that the move is not in the best interests of the children, the trial court denied the request to relocate. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

FRANK G. CLEMENT, JR., J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, P.J., M.S., and RICHARD H. DINKINS, J., joined.

Joseph Y. Longmire, Jr., Hendersonville, Tennessee, for the appellant, Kristi Michelle Carman.

Betty Lou Taylor, Hartsville, Tennessee, for the appellee, Michael Andrew Carman.

## OPINION

Michael Andrew Carman ("Father") and Kristi Michelle (Carman) Gallant ("Mother") were divorced in November 2008 after twelve years of marriage. Mother was designated the primary custodial parent for the parties' seven (7) minor children. At the time of divorce, the children ranged in age from two months to eleven years old. Father was granted visitation with the children two days per week, alternating holidays, and "all reasonable and agreeable times in addition to regularly scheduled parenting time." After the divorce, both parties

continued to live in Middle Tennessee, specifically Macon County and Trousdale County, approximately thirty miles apart from one another.

On April 30, 2010, Mother sent notice to Father that she intended to relocate with the children to Grande Prairie, Alberta, Canada, located approximately 2700 miles from Tennessee. Her stated reason for the relocation was that she planned to marry Tim Gallant, a citizen and resident of Canada.

On May 14, 2010, Father filed a Petition in Opposition of Relocation and for Modification of Residential Parenting, pursuant to Tennessee Code Annotated § 36-6-108. He asked that Mother be enjoined from moving with the children to Canada and, if Mother relocated, for a modification to the parties' parenting plan, designating Father as the primary residential parent and granting Mother parenting time to be exercised in Tennessee. Mother filed a counter-petition, asserting it was in the best interests of the children that they be allowed to relocate with Mother to Canada and proposing a parenting plan granting Father six weeks of parenting time in the summer in Tennessee, and one week each during Spring, Fall, and Christmas in Canada, with child support modified accordingly.

A full evidentiary hearing was held on April 20, 2011. Because it was undisputed that Mother spent a greater amount of time with the children than Father did, the trial court limited the scope of the hearing to the issues raised by Tennessee Code Annotated § 36-6-108(d)(1), that is, whether the relocation is for a reasonable purpose, whether the relocation would pose a threat of specific and serious harm to the children greater than the threat of harm of a change of custody, whether Mother's motivation for relocating is vindictive in that it is intended to deter Father's visitation rights, and whether relocation is in the best interests of the children. *Id.* § (d)–(e). Both parties testified, as did Ann Carman who is Father's mother, Tim Gallant, and the parties' three oldest children, Dustin, Dillon and Alex.

The proof presented at the hearing revealed that Mother and Mr. Gallant met on a dating website in December 2009, became engaged four months later in April 2010 when Mr. Gallant visited Tennessee for the first time, and married just prior to the hearing on April 10, 2011. Mr. Gallant testified that he has lived most of his life in Grande Prairie, although he studied and worked for a few years in the United States. Between 1997 and 2000, he attended the Mid-American Reformed Seminary in Dyer, Indiana, and between 2003 and 2006, he served as an interim pastor for a church in Montana. Since his return to Grande Prairie in 2006, he testified that he has been working primarily as a concrete finisher. Due to the cold weather in Grande Prairie, he only works six months a year, from April through September. He supplements his income by performing website development work part time. He stated he is also one of three elders in a small church in Grande Prairie. As a non-ordained church elder, he delivers a sermon every third Sunday, performs some administrative functions, and

provides spiritual counseling to the members of the church. Mr. Gallant is paid $250 for each sermon delivered, however he is not compensated for his other church services. Mr. Gallant's income, including his work as a concrete finisher, website developer and part-time minister, is approximately $40,000 a year.

Mr. Gallant testified that he plays an important role in the care of his then 84-year-old mother. Although she is chronically ill, she is able to get around the house without assistance and take her own medication. She also receives home care two days per week, but is otherwise dependent on Mr. Gallant. She has a daughter, Mr. Gallant's sister, who lives thirty minutes away and who is willing to help, but, as Mr. Gallant explained, his sister is usually not called upon because his mother disapproves of his sister's lifestyle.

Mother testified that she will remain a stay-at-home mom and will home school the children in Grande Prairie, as she did in Tennessee. When questioned about her plans for living arrangements, Mother stated that Mr. Gallant and his mother intended to purchase a larger home in Grande Prairie where Mother and the children would also live. Mother stated she would not be responsible for caring for Mr. Gallant's mother, beyond preparing meals for the household. In terms of Mr. Gallant's role in caring for the children, Mother testified that she and Mr. Gallant had not decided on the details of his relationship with the children, but that he would be not be making educational, health, or disciplinary decisions. Mother stated he would be the spiritual head of the household, and would counsel the children and read to them. At the time of the hearing, Mr. Gallant had spent time with the children over the course of four visits to Tennessee.

Mother testified that Father would be able to communicate with the children as often as he wished over the phone, and via email and video chatting. She stated there were suitable hotels within fifteen minutes of the house Mr. Gallant intended to purchase for the times when Father exercised his parenting time in Canada. As for Summer parenting time, Mother stated that she would drive their seven children to Tennessee, a 2700-mile journey that takes four to five days at seven to ten hours per day to complete, each way. Plane tickets cost approximately $1,000 per person; thus, it would not be economically feasible for the children to fly.

Father testified that he was concerned his children would lose touch not only with him, but also with his extended family, who lived in the area and had provided the children with a close support system since the children were born. The paternal grandfather allowed the two oldest boys to help with his auction business on Saturdays, which the boys enjoyed immensely. Father also testified that, while the children resided with their mother, he visited with the children every week, provided them with emotional support, and was a very active parent.

The parties' three oldest children testified and all expressed the same sentiment: they loved their mother and wanted her to be happy, but they did not want to move to Canada, and they enjoyed seeing both of their parents and Father's extended family on a weekly basis. Dustin, the oldest child, testified that he did not want to be separated from Father because he helped Dustin with his anger issues and by taking him to see a counselor.

At the conclusion of the hearing, the trial court denied Mother's request to relocate, finding that the move had no reasonable purpose, that it posed a threat of specific and serious harm to the children, and that it was not in the children's best interests. The court also denied Mother's request for attorney fees. This appeal followed.

### STANDARD OF REVIEW

The standard of review of a trial court's findings of fact is de novo and we presume that the findings of fact are correct unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.2d 291, 296 (Tenn. Ct. App. 2001). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. *Walker v. Sidney Gilreath & Assocs.*, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000); *The Realty Shop, Inc. v. R.R. Westminster Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999). Where the trial court does not make findings of fact, there is no presumption of correctness and we "must conduct our own independent review of the record to determine where the preponderance of the evidence lies." *Brooks v. Brooks*, 992 S.W.2d 403, 405 (Tenn. 1999). We also give great weight to a trial court's determinations of credibility of witnesses. *Estate of Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997); *B & G Constr., Inc. v. Polk*, 37 S.W.3d 462, 465 (Tenn. Ct. App. 2000). Issues of law are reviewed de novo with no presumption of correctness. *Nelson v. Wal-Mart Stores, Inc.*, 8 S.W.3d 625, 628 (Tenn. 1999).

### RELOCATION

When a divorced parent seeks to relocate with the parties' minor children more than 100 miles from the other parent, Tennessee Code Annotated § 36-6-108(a) requires that the relocating parent shall give written notice of the proposed move. Grande Prairie, Alberta, Canada is 2700 miles from Hartsville, Tennessee where Father resides. Mother provided the requisite notice of the proposed relocation, and this action commenced when Father timely filed this petition to enjoin Mother from relocating with the children.

Because Mother spends more time with the children than Father, Mother is presumed to be entitled to relocate unless Father can establish one of the three grounds listed under

Tennessee Code Annotated § 36-6-108(d)(1):

> (A)  The relocation does not have a reasonable purpose;
> (B)  The relocation would pose a threat of specific and serious harm to the child that outweighs the threat of harm to the child of a change of custody; or
> (C)  The parent's motive for relocating with the child is vindictive in that it is intended to deter visitation rights of the non-custodial parent or the parent spending less time with the child.

*Id*. If the trial court finds that none of the three grounds have been established, no further inquiry is required and the court "shall" grant the request to relocate. *Id*. However, if any of the three grounds is established, the court shall determine whether relocation is in the children's best interests. *Id.* § -108(e). If the court finds it is, the request for relocation is to be granted. If the court finds it is not in the best interests of the children to relocate, then the requested relocation is to be denied. If the parent elects to relocate without the children, the trial court must modify the parenting plan after considering all relevant factors. *Id.*

In this case, the trial court found that Mother did not have a reasonable purpose for the relocation, that the relocation posed a threat of specific and serious harm to the children, and that the relocation was not in the children's best interests. Based upon these findings, the trial court denied Mother's request to relocate. Mother contends this was error because, she asserts, the evidence preponderates against the trial court's findings.

"Relocation cases are fact intensive and require an examination of the specific facts related to the rationale and motives for moving." *Mitchell v. Mitchell*, No. M2004-00849-COA-R3-CV, 2005 WL 1521850, at *2 (Tenn. Ct. App. June 27, 2005) (citing *Schremp v. Schremp*, No. W1999-01734, 2000 WL 1839127, at *2 (Tenn. Ct. App. Dec. 7, 2000)). Thus, we will examine the record to see if the evidence preponderates against the findings by the trial court. We will first determine whether the evidence in the record supports the finding that there was no reasonable purpose for the relocation or that the relocation poses a threat of specific and serious harm to the children. Tenn. Code Ann.§ 36-6-108(d).

I.
REASONABLE PURPOSE

Once the parent seeking to relocate states the reasons for the proposed relocation, the burden is on the parent opposing the relocation "to prove that the proposed relocation 'does not have a reasonable purpose.'" *Webster v. Webster*, No. W2005-01288-COA-R3-CV, 2006 WL 3008019, at *14 (Tenn. Ct. App. Oct. 24, 2006) (quoting Tenn. Code Ann. § 36-6-108)).

In the context of relocating minor children, "the 'reasonable purpose' must be a significant purpose, substantial when weighed against the gravity of the loss of the non-custodial parent's ability 'to participate fully in their children's lives in a more meaningful way.'" *Webster*, 2006 WL 3008019, at *14 (quoting *Aaby v. Strange*, 924 S.W.2d 623, 629 (Tenn. 1996)). When determining whether a purpose is "reasonable," we are required to "examine the specific, factual rationales for the relocation." *Schremp*, 2000 WL 1839127, at *2.

Mother's only stated purpose for the relocation to Grande Prairie, Alberta, Canada, is to live with her new husband, Tim Gallant. As this court has recognized, "it is reasonable for a husband and wife to want to live together." *Mitchell*, 2005 WL 1521850, at *3. However, the inquiry does not end there. A parent's proposed relocation "based solely on a new marriage does not always mean that it is reasonable for the child to relocate with the parent." *Webster*, 2006 WL 3008019, at *9. Mother's desire to live with Tim Gallant must be "weighed against the gravity of the loss" of Father's ability "to participate fully" in the lives of his seven minor children "in a more meaningful way." *See Webster*, 2006 WL 3008019, at *14.

Parental relocation cases considering similar issues – that is, whether relocating to live with a new spouse is a reasonable purpose – generally focus on whether it is more reasonable for the new spouse to relocate. In *Webster v. Webster*, the mother sought to relocate 1700 miles away to Quebec, Canada, with the parties' two minor children, for the sole purpose of residing with her fiancé, a pilot in the Canadian Air Force for over eighteen years. 2006 WL 3008019, at *1. The relocation was denied in the trial court, but this court reversed, finding:

> If [the mother's] intent was simply to move with the children to Canada so that the girls could engage in winter sports and learn to speak French, clearly that would not be a "reasonable purpose" for the proposed relocation when juxtaposed against the cost of such a move to Father and the girls. Here, however, her undisputed purpose is to marry a Canadian citizen. Moreover, . . . there is undisputed evidence that Mother's fiancé has long been settled in Canada, could not find comparable employment in Tennessee, and would suffer substantial adverse impact to his career and accrued pension rights if he moved to Tennessee. This is a substantial purpose for the proposed relocation.

*Id.* at *15. Similarly, in *Clark v. Clark*, this court found a reasonable purpose, thus affirming the trial court, where a mother sought to relocate with the parties' two minor children from Nashville to Richmond, Virginia to join her fiancé. No. M2002-03071-COA-R3-CV, 2003 WL 23094000, at *7 (Tenn. Ct. App. Dec. 30, 2003). This court relied on the fact that the mother "investigated the possibility of [her fiancé] moving to Tennessee," but discovered that

the only jobs available in his field of expertise were in Washington, D.C., and that there were no comparable fields in Tennessee. *Id.* Moreover, in *Clark*, the father would still be able to have parenting time with the children one weekend per month. *Id.* at *2; *see also Mann v. Mann*, 299 S.W.3d 69, 72-74 (Tenn. Ct. App. 2009) (the father failed to establish there was no reasonable purpose for the mother's relocation to live with her new spouse where the new spouse would suffer a "significant reduction in income" if required to move, and the mother's employer would allow her to move without changing positions or salary).

By contrast, in *Schremp v. Schremp*, the trial court found no reasonable purpose for the relocation where the mother of the parties' two minor children sought to relocate from Memphis, Tennessee, to Charlotte, North Carolina in order to reside with her new husband, a pilot for Federal Express. 2000 WL 1839127, at *2. This court affirmed on appeal, holding:

> Ms. Schremp understandably desires to live with her new husband and [he] currently resides in Charlotte, North Carolina. However, [the new husband] is not required to live in North Carolina for his employment. Indeed, according to his own testimony, it does not matter where in the United States he resides. . . . His stated reasons for remaining in North Carolina are his ties to the community and his proximity to his elderly mother whom he visits two days a month. Upon our review, we cannot find that these are compelling reasons for [the new husband] to refuse to move to Memphis to live with his new wife.

> Ms. Schremp has provided this court with no other reasonable purpose to move to North Carolina. Neither she nor her children have any relatives in North Carolina. There has been no suggestion that the move will enhance Ms. Schremp's education or career prospects in the near future. While it is clear that a husband and wife should live together, it is also obvious that both may have to make sacrifices to ensure they have that opportunity.

*Id.*; *see also Mitchell*, 2005 WL 1521850, at *3 (finding no reasonable purpose and stating, "there is . . . a choice to make and that is whether it is reasonable, or more reasonable, for the husband to relocate to the wife's community").

Turning to the case at bar, Father concedes it is reasonable for Mother to desire to live with Mr. Gallant, but his position is that Mother's relocation has no reasonable purpose because the proof shows Mr. Gallant could move to Tennessee. In support of his claim, Father offered proof that Mr. Gallant's skills as a concrete finisher (Mr. Gallant's primary source of income) would transfer to Tennessee and that Tennessee's climate would allow for a much longer working season for concrete finishing than in Grande Prairie, thereby

substantially increasing his potential income. Other than some paid vacation time, Mr. Gallant has no employment benefits that he would be forced to surrender to move to Tennessee. He is also a website developer, a skill that would likewise transfer to Tennessee.

To work in Tennessee, Mr. Gallant must obtain the proper authorization from the United States Customs and Immigration Services; a process which Mr. Gallant testified is "definitely a difficult process to follow." However, Mr. Gallant has previously obtained temporary authorization to work in the United States as a religious worker, and he is now married to a United States citizen and thus may be eligible for permanent legal status and work authorization. *See* Green Card for an Immediate Relative of a U.S. Citizen, U.S. Citizenship and Immigration Services, http://www.uscis.gov ("Eligible immediate relatives include the U.S. citizen's spouse," "As a permanent resident, you have the right to work in the United States at any legal work of your qualification and choosing.").

Other reasons advanced for why Mr. Gallant is not moving to Tennessee are his role in his local church in Grande Prairie and his responsibility to care for his elderly mother. He helped found the church in 2005, and has watched it grow to a congregation of almost 100 members. He plays an active role in the church by delivering sermons every third week, counseling members of the congregation, and serving as the Council Clerk. He testified that the congregation often looks to him for scripture interpretation and other theological questions, although he is not ordained. However, the proof also shows that Mr. Gallant shares his duties with two other church elders. Moreover, Mother and the children belong to a church in middle Tennessee of the same denomination as Mr. Gallant's church in Grande Prairie, which Mr. Gallant could join.

As for Mr. Gallant's mother, the proof was that she is not able to leave Canada due to her advanced age and declining health. She is, however, able to move about her home without assistance and administer her own medication. She receives home care two days per week, and Mr. Gallant's sister, who lives approximately thirty minutes away, is willing and able to help with the mother's care. Indeed, the sister has done so in the past, just not on a regular basis like Mr. Gallant. It is undisputed that Mr. Gallant provides his mother with love, companionship and support; however, and most respectfully, his decision to stay in Canada to support his mother cannot be regarded more important than other significant factors to be considered in making the "reasonable purpose" determination.

The facts of this case are most unique. Unlike in *Webster*, Mr. Gallant's career and livelihood are not tied to his status as a Canadian resident and citizen, and Mr. Gallant will not be forced to forego years of accrued military benefits by moving to Tennessee. *Webster*, 2006 WL 3008019, at *15 (relocation allowed). In *Clark*, the new spouse's career was perhaps not as geographically restricting as a foreign military career, but there, the negative

impact of the relocation was mitigated by the fact that the non-relocating parent would still be able to regularly exercise parenting time. *Clark*, 2003 WL 2309400, at *6 (relocation allowed). These cases favor relocation more than the facts at issue here. On the other hand, Mr. Gallant's situation is more compelling than in *Schremp*, where the new spouse could move without having any impact on his employment at all, only provided care to his elderly mother two days per month, and lacked Mr. Gallant's church-based community ties. 2000 WL 1839127, at *2 (relocation denied).

On balance, Mr. Gallant's career, church duties, and his responsibility to his mother are not sufficient to render it unreasonable for Mr. Gallant to relocate to Tennessee to live with his new wife. To the contrary, as the trial court found, it is more reasonable for him to move to Tennessee than for Mother to relocate a distance of 2,700 miles with seven minor children to live with him in Canada. *See Webster*, 2006 WL 3008019, at *14.

Furthermore, these considerations must also be weighed against "the gravity of the loss" of Father's ability to participate fully and meaningfully in the lives of his seven minor children, the youngest of which was less than three years old at the time of the hearing in this matter. *Webster*, 2006 WL 3008019, at *14 (citing *Aaby*, 924 S.W.2d at 629). Given the distance to Grande Prairie from Hartsville, the difficulties and time and expense to travel to and from Grande Prairie, and the number of children and their ages, we find Father's loss would be grave.

For the foregoing reasons, we affirm the trial court's determination that Mother's proposed relocation to Canada with the seven minor children has no reasonable purpose.[1] Tenn. Code Ann. § 36-6-108(d)(1)(A).

## II.
### BEST INTERESTS OF THE CHILDREN

The second requirement of the parental relocation statutes is that the non-relocating parent establish the relocation is not in the best interests of the children, as provided by Tennessee Code Annotated § 36-6-108(e):

(e) If the court finds one (1) or more of the grounds designated in subsection (d), the court shall determine whether or not to permit relocation of the child

---

[1] Father is only required to establish one of the three grounds under § 36-6-108(d)(1); thus, the issues of whether the relocation poses a threat of specific and serious harm to the children, Tenn. Code Ann. § 36-6-108(d)(1)(B), and whether Mother's motive for relocating with the children is vindictive in that it is intended to defeat Father's visitation rights, Tenn. Code Ann. § 36-6-108(d)(1)(C), are moot.

based on the best interests of the child. If the court finds it is not in the best interests of the child to relocate as defined herein, but the parent with whom the child resides the majority of the time elects to relocate, the court shall make a custody determination and shall consider all relevant factors including the following where applicable:

> (1) The extent to which visitation rights have been allowed and exercised;
> (2) Whether the primary residential parent, once out of the jurisdiction, is likely to comply with any new visitation arrangement;
> (3) The love, affection and emotional ties existing between the parents and child;
> (4) The disposition of the parents to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent has been the primary caregiver;
> (5) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment;
> (6) The stability of the family unit of the parents;
> (7) The mental and physical health of the parents;
> (8) The home, school and community record of the child;
> (9)(A) The reasonable preference of the child if twelve (12) years of age or older;
> (B) The court may hear the preference of a younger child upon request. The preferences of older children should normally be given greater weight than those of younger children.
> (10) Evidence of physical or emotional abuse to the child, to the parent or to any other person; and
> (11) The character of any other person who resides in or frequents the home of a parent and such person's interactions with the child.

Applying these factors to the case at bar, we find, as the trial court did, that relocation is not in the best interests of the children. The record shows that the children shared a strong and loving relationship with Father and Father's extended family, all of whom live nearby. Father's mother testified that she and the children had a strong bond, and that the extended family provided the children with a large support system. *See generally Mitchell*, 2005 WL 1521850, at *5 (holding that relocation is not in the child's best interests due to local network of extended family support). The three oldest children each testified that their preference was

to live in Tennessee to be near their entire family and to continue their close relationship with Father. The oldest child, Dustin, who was fourteen at the time of the hearing, testified that he did not want to move to Canada because "this is where my family is. . . . This is where I've lived my whole life and I don't want to move." Dylan and Alex Carman, twelve and ten years old respectively, expressed the same preference. The record contains ample proof that Father and his family nurture and enrich the children and are an important part of the children's identity, especially the older children.

Moreover, and although we find Mother and Mr. Gallant both testified credibly, we are concerned by a marriage of two people who spent relatively few days in each other's presence before the marriage, a fact that is more significant due to the distance of 2,700 miles that would separate the seven minor children from their father and an established and loving support system in Tennessee, especially realizing how difficult and expensive it will be for Father to visit the children. Accordingly, we must be mindful of the fact that after "meeting" on the internet in December of 2009, and emailing and talking on the phone on several occasions, Mr. Gallant traveled to Tennessee in April of 2010 to meet Mother for the first time and at the conclusion of a 6 day-visit, they got engaged. During the engagement, Mother visited Mr. Gallant in Canada in June 2010, August 2010, and February 2011, for a few days each time. Mr. Gallant returned to Tennessee in March 2011, during which time he gave a deposition for this litigation, and again on April 7, 2011. Three days later, on April 10, 2011, he and Mother married. He remained with his bride in Tennessee to testify at the hearing in this matter on April 20, 2011, and returned to Canada two days later on April 22, 2011. The record suggests that prior to the hearing, Mr. Gallant visited Mother in Tennessee for a total of one month from the time they met, and Mother visited Mr. Gallant approximately two to three weeks or so in Canada, never with the seven minor children. We note this fact not to undermine the commitment they have to each other but in consideration of the children's best interests due to the couple's very brief relationship, the distance from Father and the children's support system in Tennessee, and the difficulty and expense of traveling to Canada in the event of an emergency.

Considering the record as a whole, the evidence does not preponderate against the trial court's determination that the proposed relocation is not in the best interests of the children. We therefore affirm the trial court's decision to deny permission to relocate.

### ATTORNEY FEES

Mother contends she is entitled to recover attorney fees at the trial court level and on appeal under Tennessee Code Annotated § 36-6-108(i). This provision provides that "[e]ither party in a parental relocation matter may recover reasonable attorney fees and other litigation expenses from the other parent in the discretion of the court." *Id*. Whether to award attorney

fees is within the sound discretion and we find no error with the decision to deny Mother's request for attorney fees in the trial court. Because Father has prevailed in his Petition in Opposition of Relocation, we also deny Mother's request for attorney fees on appeal. *See In re H.B-K.*, No. M2010-00561-COA-R3-JV, 2010 WL 4940586, at *6 (Tenn. Ct. App. Nov. 30, 2010).

## IN CONCLUSION

The judgment of the trial court is affirmed in all respects. Costs of appeal are assessed against Mother, Kristi Michelle Gallant.

_____
FRANK G. CLEMENT, JR., JUDGE